UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Abdul Karim Hassan,<br><br>Plaintiff,<br><br>-v-<br><br>The State of North Carolina, and<br>North Carolina State Board of Elections,<br><br>Defendants. | Civ. Action #:<br><br>**COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF** |

Plaintiff, Abdul Karim Hassan, pro se, ("Plaintiff" or "Hassan"), complaining of Defendants, respectfully alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff, a naturalized American citizen and a candidate for the Presidency of the United States seeks a judgment: 1) declaring Defendants' requirement (Ex. 1) that Plaintiff be a natural born citizen in order to gain access to the North Carolina Presidential ballot is invalid under the Equal Protection Clause, the Citizenship Clause and the Privileges and Immunities Clause of the Fourteenth Amendment of the United States Constitution because of the "natural born" requirement; 2) declaring that the natural born provision of the U.S. Constitution is irreconcilable with and has been trumped, abrogated and implicitly repealed by the equal protection guarantee of the Fifth and Fourteenth Amendments, as well as the Citizenship Clause and the Privileges and Immunities Clause of the Fourteenth Amendment; and 3) declaring that the conduct of the North Carolina State Board of Elections in denying Plaintiff access to the North Carolina Presidential ballot because of his national origin, violates the Equal Protection Clause, the Citizenship Clause, and the Privileges and Immunities Clause of the Fourteenth Amendment of the United States Constitution; 4) enjoining Defendants from discriminating against Plaintiff because of his national origin and/or status as a naturalized American citizen concerning or relating to access to the Presidential election ballot in North Carolina; 5) awarding Plaintiff costs and attorney's fees; and 6) granting Plaintiff such other, further and different relief as the Court deems just and proper.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves questions of federal law.

3. Venue is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391(b).

4. This Court is empowered to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

5. Plaintiff Abdul Karim Hassan ("Plaintiff" or "Hassan") is an adult individual over the age of eighteen years currently residing in Queens County in the State of New York.

6. Plaintiff Hassan is a 2012 candidate for the Presidency of the United States.

7. Defendant North Carolina State Board of Elections is the arm of the State of North Carolina which administers North Carolina's election laws and is responsible for and administers the process of placing candidates on the presidential ballot in North Carolina and is located at: 506 North Harrington Street, Raleigh, North Carolina 27603.

8. The State of North Carolina is one of the States that comprise the United States of America. The State of North Carolina is represented by its Attorney General located at: 114 West Edenton Street, Raleigh, NC 27603-1712. Tel: 919-716-6400.

## STATEMENT OF FACTS

9. Petitioner Abdul Karim Hassan was born in 1974 in the country of Guyana. See also http://www.youtube.com/watch?v=7Cd18lsx1ls .

10. Petitioner's race is East Indian.

11. Petitioner is a naturalized American citizen who was naturalized within the United States and took the oath of citizenship at a United States District Court in New York City.

12. Petitioner satisfies all of the constitutional requirements for holding the Office of President of the United States except the requirement of natural born status. See U.S. Constitution, Article II, Section 1, Clause 5 ("Natural Born Clause").

13. In March 2008, petitioner announced his candidacy for the Presidency of the United States through his presidential website at www.abdulhassanforpresident.com.

14. Petitioner is currently focused on the 2012 presidential elections but if he is not successful in 2012, petitioner intends to continue his current campaign without interruption until the next presidential elections in 2016.

15. Since the announcement of his candidacy in March 2008, petitioner has used and will continue to use without interruption, his presidential website in much the same way as the leading presidential candidates – to promote and communicate his candidacy, issue positions and campaign to voters and the public.

16. Plaintiff has also been communicating this message to the American public through Youtube.com.

17. In order to compliment and improve the use of the website, petitioner has purchased and paid for a national presidential advertising campaign through Google. This advertisement has been running and will continue to run and it links to petitioner's presidential website.

18. In addition, petitioner has done interviews with and has been covered by both print and broadcast media.

19. Petitioner's presidential candidacy and campaign have also been covered widely on the internet as a quick online search will reveal.

20. This growth in petitioner's presidential campaign and candidacy has resulted in thousands of hits each month to petitioner's presidential website from all across the country and the growth continues.

21. Petitioner will continue to build on this initial success and continue to promote his candidacy and ideas to more and more voters in North Carolina and across the country.

22. Since announcing his presidential candidacy in March 2008, petitioner has paid annual registration fees for his presidential website domain names, and in addition, petitioner has paid monthly fees to host and operate his presidential website. Petition has also been paying monthly fees for a nationwide advertising campaign that links to petitioner's presidential website. Petitioner has also expended time and effort in developing the site's infrastructure and content.

23. On September 2, 2011, the Federal Election Commission ruled that plaintiff as a naturalized American citizen running for President of the United States is covered by the Federal Election Campaign Act ("FECA") and related laws and that plaintiff is required to comply with the record-keeping, expenditure and other requirements of the federal election laws and plaintiff has been and will continue to spend money, time and effort to comply with these requirements. (See FEC ruling at http://www.abdulhassanforpresident.com/fec)

24. In July 2011, Plaintiff asked Defendants whether his status as a naturalized American citizen will prevent him from being placed on the North Carolina presidential ballot.

25. By letter dated July 22, 2011, Defendants responded to Plaintiff's and stated that (See Exhibit 1):

> Dear Mr. Hassan,
>
> Until Article II, Section 5 of the United States Constitution is repealed or held otherwise ineffective by the Supreme Court of the United States; you wi" not qualify as a Presidential Candidate in the State of North Carolina because you are not a natural born citizen.
>
> Also please be informed that elections in North Carolina are under the jurisdiction of the N.C. State Board of Elections and not the Secretary of State. Secretary of State Marshall was kind enough to forward your letter to our agency.

26. Because of Defendants' use of the natural born requirement and their refusal to place Plaintiff on the North Carolina Presidential ballot because he is a naturalized citizen, Plaintiff has been denied any chance of getting on the presidential ballot in the State of North Carolina unless Plaintiff prevails in this lawsuit.

27. If he wins this case, Plaintiff will immediately pursue access to the North Carolina Presidential ballot.

## AS AND FOR A FIRST CAUSE OF ACTION
## U. S. Constitution, 14th and 5th Amendments & Article II, Section 1, Clause 5

28. Plaintiff incorporates the allegations in paragraphs 1 through 27 above as if set forth fully and at length herein.

29. The Citizenship Clause of the Fourteenth Amendment, Section 1, states in relevant part that :

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside.

30. The Privileges and Immunities Clause of the Fourteenth Amendment, Section 1, states in relevant part that :

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States

31. The Equal Protection Clause of the Fourteenth Amendment, Section 1, states in relevant part that :

> No state shall ... deny to any person within its jurisdiction the equal protection of the laws.

32. Given that the Defendant's natural born requirement (See Ex. 1) discriminate against Plaintiff because of his status as a naturalized citizen – his national origin, they violate Plaintiff's rights under the Equal Protection Clause, the Citizenship Clause and the

Privileges and Immunities Clause of the Fourteenth Amendment. See United States v. Virginia, 518 U.S. 515, 532 n. 6 (1996) (noting that "[t]he Court has thus far reserved most stringent judicial scrutiny for classifications based on race or national origin"). See also Afroyim v. Rusk, 387 U.S. 253, 262 (1967) (stating without exception as to presidential eligibility that, "(The naturalized citizen) becomes a member of the society, possessing all the rights of a native citizen, and standing, in view of the constitution, on the footing of a native."

33. Defendants, in refusing to provide Plaintiff with access to the North Carolina Presidential ballot because of his national origin and status as a naturalized American citizen (See Exhibit 1), violated and are violating Plaintiff's rights under the Equal Protection Clause, the Citizenship Clause and the Privileges and Immunities Clause of the Fourteenth Amendment. See Afroyim v. Rusk, 387 U.S. 253, 262 (1967).

34. The natural born clause of the U.S. Constitution, including the invidious national origin discrimination contained therein, is irreconcilable with and is trumped, abrogated and implicitly repealed by the Equal Protection Clause, the Citizenship Clause and the Privileges and Immunities Clause of the Fourteenth Amendment as well as the Equal Protection guarantee of the Fifth Amendment – all of which prohibit such national origin discrimination. See McDonald v. City of Chicago, Ill. 130 S.Ct. 3020, 3060 (2010), ("[invidious discrimination is] irreconcilable with the principles of equality, government by consent, and inalienable rights proclaimed by the Declaration of Independence and embedded in our constitutional structure."). See also Adarand v. Pena, 515 U.S. 200, 213 (1995), reiterating that, "[d]istinctions between citizens solely because of their ancestry

are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality."

35. The U.S. Supreme Court has also described its decision in <u>Dred Scott v. Sandford</u>, 60 U.S. 393 (1857), to choose constitutional discrimination over constitutional equality as a great "self-inflicted wound[1]." <u>South Carolina v. Regan</u>, 465 U.S. 367, 412 (1984).

36. Upholding the invidious discrimination in the Natural Born Clause in light of the equal protection guarantees of the Fourteenth and Fifth Amendments, will be another great "self-inflicted wound." Plaintiff is therefore entitled to the declaratory and injunctive relief requested herein.

37. See also http://www.youtube.com/watch?v=pXiTsYGWZjM .

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

38. Declare that Defendants' requirement (Ex. 1) that Plaintiff be a natural born citizen in order to gain access to the North Carolina Presidential ballot is invalid under the Equal Protection Clause, the Citizenship Clause and the Privileges and Immunities Clause of the Fourteenth Amendment of the United States Constitution because of the "natural born" requirement;

39. Declare that the natural born provision of the U.S. Constitution is irreconcilable with and has been trumped, abrogated and implicitly repealed by the equal protection guarantee of the Fifth and Fourteenth Amendments, as well as the Citizenship Clause and the Privileges and Immunities Clause of the Fourteenth Amendment;

---

[1] See http://www.supremecourt.gov/publicinfo/speeches/sp_03-21-03.html - In reference to the Dredd Scott decision, then Chief Justice Rehnquist said in a 2003 speech that 'It was rightly referred to by a later Chief Justice as a "self-inflicted wound" from which it took the Court at least a generation to recover.

40. Declare that the conduct of the North Carolina State Board of Elections in denying Plaintiff access to the North Carolina Presidential ballot because of his national origin, violates the Equal Protection Clause, the Citizenship Clause, and the Privileges and Immunities Clause of the Fourteenth Amendment of the United States Constitution;

41. Enjoin Defendants from discriminating against Plaintiff because of his national origin and/or status as a naturalized American citizen concerning or relating to access to the Presidential election ballot in North Carolina;

42. Award Plaintiff costs and attorney's fees; and

43. Grant Plaintiff such other, further and different relief as the Court deems just and proper.

**Dated: Queens Village, New York**
    **December 8, 2011**

Respectfully submitted,

*/s/ Abdul Hassan*

Abdul K. Hassan, Esq.
*Plaintiff, Pro Se*
215-28 Hillside Avenue
Queens Village, NY 11427
Tel: 718-740-1000
Email: abdul@abdulhassan.com